UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KENNETH P. DESILVA, | ) | 1:11-cv—00263-LJO-SKO-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | DISMISS THE PETITION WITHOUT |
| | ) | LEAVE TO AMEND FOR FAILURE TO |
| v. | ) | STATE A CLAIM COGNIZABLE PURSUANT |
| | ) | TO 28 U.S.C. § 2254 (DOC. 1) |
| K. ALLISON, Warden, | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS TO |
| Respondent. | ) | DECLINE TO ISSUE A CERTIFICATE OF |
| | ) | APPEALABILITY AND TO DIRECT THE |
| | ) | CLERK TO CLOSE THE CASE |

**DEADLINE FOR OBJECTIONS: THIRTY (30) DAYS**

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is the petition, which was filed on February 17, 2011.

I. <u>Screening the Petition</u>

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus.

1

The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n. 7 (1977)). Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

Petitioner is an inmate of the California Substance Abuse Treatment Facility (CSATF) at Corcoran, California, serving a sentence of fifteen years to life imposed by the Monterey County Superior Court in 1993 pursuant to Petitioner's conviction of second degree murder with the use of a firearm. (Pet. 1.) Petitioner challenges the decision of California's Board of

2

Parole Hearings (BPH) made after a hearing held on October 26, 2009, in which Petitioner was found unsuitable for parole for a period of three years. (Pet 6-7, 35, 106-23.) Petitioner raises the following claims: 1) use of "Marcy's Law" to impose a three-year period of denial constitutes an ex post facto law because it increased Petitioner's maximum release date by over two and one-half years; 2) denial of parole for three years constituted double jeopardy because Petitioner was in effect re-sentenced with a more distant release date than had been calculated earlier; and 3) the denial of parole was not supported by any evidence indicating that Petitioner presented or presents an unreasonable risk of danger to the public safety in view of Petitioner's record, rehabilitation, vocational attributes, and low potential for future violence. (Pet. 6-8.)

I. Failure to State a Cognizable Ex Post Facto Claim

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010) (per curiam).

Petitioner alleges that his parole was denied for three

years based on the application of "Marcy's Law" (pet. 7).  The Court understands this to be a reference to California's Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which on November 4, 2008, effected an amendment of Cal. Pen. Code § 3041.5(b)(3) that resulted in a lengthening of the period between parole suitability hearings.

Before Proposition 9 was enacted, Cal. Pen. Code § 3041.5(b)(2) provided that the suitability hearings would generally occur every year, but could occur every two years in cases in which the board found that it was not reasonable to expect parole would be granted in a year and stated the bases for the finding, or every five years if the prisoner had been convicted of murder and the board found that it was not reasonable to expect parole to be granted during the following years and stated the bases for the finding in writing.  Cal. Pen. Code § 3041.5(b)(2) (2008); Gilman v. Schwarzenegger, - F.3d -, No. 10-15471, 2011 WL 198435, at *2 (9th Cir. Jan. 24, 2011). Proposition 9 amended Cal. Pen. Code § 3041.5(b)(3) to provide that future parole suitability hearings should be scheduled in fifteen years, ten years, or three, five, or seven-year intervals years unless the board finds by clear and convincing evidence that statutory criteria relevant to release and the safety of the victim and public did not require the greater period of continued imprisonment.  Cal. Pen. Code § 3041.5(b)(3) (2010); Gilman v. Schwarzenegger, 2011 WL 198435 at *2.

In addition, Proposition 9 amended the law concerning parole deferral periods by authorizing the Board to advance a hearing date in its discretion either sua sponte or at the request of the

4

1  Petitioner. § 3041.5(b), (d); <u>Gilman v. Schwarzenegger</u>, 2011 WL
2  198435, at *6.
3     The Constitution provides, "No State shall... pass any... ex
4  post facto Law." U.S. Const. art I, § 10. The Ex Post Facto
5  Clause prohibits any law which: 1) makes an act done before the
6  passing of the law, which was innocent when done, criminal; 2)
7  aggravates a crime and makes it greater than it was when it was
8  committed; 3) changes the punishment and inflicts a greater
9  punishment for the crime than when it was committed; or 4) alters
10 the legal rules of evidence and requires less or different
11 testimony to convict the defendant than was required at the time
12 the crime was committed. <u>Carmell v. Texas</u>, 529 U.S. 513, 522
13 (2000). Application of a state regulation retroactively to a
14 defendant violates the Ex Post Facto Clause if the new
15 regulations create a "sufficient risk" of increasing the
16 punishment for the defendant's crimes. <u>Himes v. Thompson</u>, 336
17 F.3d 848, 854 (9th Cir. 2003) (citing <u>Cal. Department of
18 Corrections v. Morales</u>, 514 U.S. 499, 509 (1995)). When the rule
19 or statute does not by its own terms show a significant risk, the
20 petitioner must demonstrate, by evidence drawn from the rule's
21 practical implementation by the agency charged with exercising
22 discretion, that its retroactive application will result in a
23 longer period of incarceration than under the earlier rule.
24 <u>Garner v. Jones</u>, 529 U.S. 244, 250, 255 (2000).
25     Previous amendments to Cal. Pen. Code § 3041.5, which
26 initiated longer periods of time between parole suitability
27 hearings, have been upheld against challenges that they violated
28 the Ex Post Facto Clause. <u>See</u>, <u>e.g.</u>, <u>California Department of

Corrections v. Morales, 514 U.S. 499, 509 (1995) (where the great majority of prisoners were found unsuitable, a 1982 increase of the maximum period for deferring hearings to five years for offenders who had committed multiple homicides only altered the method of setting a parole release date and did not result in a sufficient risk of increasing the punishment or measure of punishment for the crime in the absence of modification of punishment or of the standards for determining either the initial date for parole eligibility or an inmate's suitability for parole); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (finding no ex post facto violation in applying amended Cal. Pen. Code § 3041.5(b)(2)(A), permitting delay of suitability hearings for several years, to prisoners sentenced to a life term before California's Determinate Sentencing Law was implemented in 1977 who otherwise would have been entitled to periodic review of suitability).

Similarly, it has been held that a state law permitting the extension of intervals between parole consideration hearings for all prisoners serving life sentences from three to eight years did not violate the Ex Post Facto Clause where expedited parole review was available upon a change of circumstances or receipt of new information warranting an earlier review, and where there was no showing of increased punishment. Under such circumstances, there was no significant risk of extending a prisoner's incarceration. Garner v. Jones, 529 U.S. 244, 249 (2000). The Court recognized that state parole authorities retain broad discretion concerning release and must have flexibility in formulating parole procedures and addressing problems associated

with confinement and release. <u>Garner v. Jones</u>, 529 U.S. 244, 252-53. Inherent in the discretionary nature of a grant of parole is the need to permit changes in the manner in which the discretion is "informed and then exercised." <u>Garner v. Jones</u>, 529 U.S. at 253. Further, the timing of the hearings in <u>Garner</u> depended in part on the parole authority's determination of the likelihood of a future grant of parole. Thus, the result was that parole resources were put to better use, which in turn increased the likelihood of release. <u>Id.</u> at 254. In <u>Garner</u>, the matter was remanded for further proceedings to determine the risk of increased punishment.

In <u>Gilman v. Schwarzenegger</u>, - F.3d -, No. 10-15471, 2011 WL 198435, at *2 (9th Cir. Jan. 24, 2011), the Ninth Circuit reversed a grant of injunctive relief to plaintiffs in a class action seeking to prevent the BPH from enforcing Proposition 9's amendments that defer parole consideration. The court concluded that the plaintiffs were not likely to succeed on their claim on the merits. <u>Id.</u> at *1, *3-*8. In <u>Gilman</u>, there was no evidence concerning whether or not more frequent parole hearings would result in more frequent <u>grants</u> of parole, as distinct from denials. <u>Id.</u> at *3. Although the changes wrought by Proposition 9 were noted to be more extensive than those before the Court in <u>Morales</u> and <u>Garner</u>, advanced hearings, which would remove any possibility of harm, were available upon a change in circumstances or new information. <u>Id.</u> at *6. In the absence of record facts from which it might be inferred that Proposition 9 created a significant risk of prolonging the plaintiffs' incarceration, the plaintiffs had not established a likelihood of

success on the merits on the ex post facto claim. Id. at *8.

Here, Petitioner has not alleged facts warranting a different conclusion. The board concluded that Petitioner posed an unreasonable risk of danger if released, and that denial was for three years, the minimum they could give under Proposition 9. To be found suitable, however, Petitioner would have to stop minimizing his conduct in committing the commitment offense, gain understanding and insight into the factors that caused his conduct, overcome uncontrolled hostility and paranoia, improve his coping skills, obtain a GED, engage in further self-help and therapy, gain understanding of why he used alcohol, and make a full relapse-prevention plan. (Pet. 106-20.)

The Court may take judicial notice of court records. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

The Court takes judicial notice of the docket and specified orders in the class action Gilman v. Fisher, 2:05-cv-00830-LKK-GGH, which is pending in this Court, including the order granting motion for class certification filed on March 4, 2009. (Doc. 182, 9:7-15.) This indicates that the Gilman class is made up of California state prisoners who 1) have been sentenced to a term that includes life, 2) are serving sentences that include the possibility of parole, 3) are eligible for parole, and 4) have been denied parole on one or more occasions. The docket further reflects that the Ninth Circuit affirmed the order certifying the class. (Docs. 257, 258.) The Court also takes judicial notice of the order of March 4, 2009, in which the court described the

case as including challenges to Proposition 9's amendments to Cal. Pen. Code § 3041.5 based on the Ex Post Facto Clause, and a request for injunctive and declaratory relief against implementation of the changes. (Doc. 182, 5-6.)

The relief Petitioner seeks in this petition concerns in part the future scheduling of Petitioner's next suitability hearing and the invalidation of state procedures used to deny parole suitability, matters removed from the fact or duration of confinement. Such types of claims have been held to be cognizable under 42 U.S.C. § 1983 as claims concerning conditions of confinement. Wilkinson v. Dotson, 544 U.S. 74, 82 (2005). Thus, they may fall outside the core of habeas corpus relief. See, Preiser v. Rodriguez, 411 U.S. 475, 485-86 (1973); Nelson v. Campbell, 541 U.S. 637, 643 (2004); Muhammad v. Close, 540 U.S. 749, 750 (2004).

Further, the relief Petitioner requests overlaps with the relief requested in the Gilman class action. It is established that a plaintiff who is a member of a class action for equitable relief from prison conditions may not maintain an individual suit for equitable relief concerning the same subject matter. Crawford v. Bell, 599 F.2d 890, 891-92 (9th Cir. 1979). This is because it is contrary to the efficient and orderly administration of justice for a court to proceed with an action that would possibly conflict with or interfere with the determination of relief in another pending action, which is proceeding and in which the class has been certified.

Here, Petitioner's own allegations reflect that he qualifies as a member of the class in Gilman. The court in Gilman has

jurisdiction over same subject matter and may grant the same relief.  A court has inherent power to control its docket and the disposition of its cases with economy of time and effort for both the court and the parties.  <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260 (9th Cir. 1992).  In the exercise of its inherent discretion, this Court concludes that dismissal of Petitioner's ex post facto claim in this action is appropriate and necessary to avoid interference with the orderly administration of justice.  <u>Cf.</u>, <u>Crawford v. Bell</u>, 599 F.2d 890, 892-93; <u>see</u> <u>Bryant v. Haviland</u>, 2011 WL 23064, *2-*5 (E.D.Cal. Jan. 4, 2011).

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440 F.2d 13, 14 (9th Cir. 1971).  In view of the allegations of the petition and the pendency of the <u>Gilman</u> class action, amendment of the petition with respect to the ex post facto claim would be futile and unproductive.

Accordingly, it will be recommended that the ex post facto claim be dismissed without leave to amend.

III.  <u>Failure to State a Cognizable Double Jeopardy Claim</u>

The Double Jeopardy Clause of the Fifth Amendment protects against not only a second prosecution for the same offense after acquittal or conviction, but also multiple punishments for the same offense.  U.S. Const. amend V; <u>Witte v. United States</u>, 515 U.S. 389, 395-96 (1995).  However, the clause does not require that a "sentence be given a degree of finality that prevents its later increase."  <u>United States v. DiFrancesco</u>, 449 U.S. 117, 137

(1980).  An acquittal and a sentence are critically different.  Id.  Thus, there is no double jeopardy protection against revocation of probation or parole with imposition of imprisonment.  Id. at 137.

Likewise, the denial of parole is neither punishment nor imposition or increase of a sentence for double jeopardy purposes; rather, it is an administrative decision to withhold early release.  Mahn v. Gunter, 978 F.2d 599, 602 n.7 (10th Cir. 1992); Alessi v. Quinlan, 711 F.2d 497, 501 (2d Cir. 1983); Roach v. Board of Pardons and Paroles, State of Arkansas, 503 F.2d 1367, 1368 (8th Cir. 1974); United States ex rel. Jacobs v. Barc, 141 F.2d 480, 483 (6th Cir. 1944).  It is established that the Double Jeopardy Clause does not provide the defendant with the right to know at any specific point in time what the precise limit of his punishment will eventually turn out to be.  United States v. DiFrancesco, 499 U.S. at 137.

Pursuant to California's sentencing scheme, when a prisoner receives an indeterminate sentence, such as fifteen years to life, the indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the power of the parole authority to set a lesser term; parole is an entirely discretionary matter.  Hayward v. Marshall, 603 F.3d 546, 558, 561-62 (9th Cir. 2010), overruled on other grounds in Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859 (2011).  Probation and parole are parts of the original sentence that must be anticipated by a prisoner.  United States v. Brown, 59 F.3d 102, 104-05 (9th Cir. 1995).

Here, Petitioner alleges generally that the denial of his

parole violated his rights against double jeopardy. (Pet. 6.) However, Petitioner alleges that he was sentenced to a term of fifteen (15) years to life. (Pet. 6-7.) Thus, the Double Jeopardy Clause was not implicated in the denial of Petitioner's parole.

Because it is clear that Petitioner was sentenced to a term that included imprisonment for life, Petitioner could not allege facts to constitute a cognizable claim that the denial of parole violated the Double Jeopardy Clause of the Fifth Amendment, as made binding on the states through the Fourteenth Amendment. Accordingly, this claim should be dismissed without leave to amend.

### IV.   Failure to State a Cognizable Due Process Claim

Petitioner alleges that the board's denial of his parole was a denial of his Fourteenth Amendment right to due process of law because numerous suitability factors supported his release, the board failed to articulate evidence to support a rational conclusion that Petitioner posed an unreasonable risk of danger to the public, and the decision was not supported by the requisite modicum of evidence of unsuitability. (Pet. 6-8.)

Reference to the transcript of the parole suitability hearing held on October 26, 2009, reflects that Petitioner was present throughout the hearing and made a statement to the board. (Pet. 35-99, 103-04.) Further, Petitioner's attorney was also present and made a statement. (Pet. 38, 99-103.) Petitioner and counsel had an opportunity to review Petitioner's central file and previous transcripts before the hearing. (Pet. 42.) After it made its decision, the board explained to Petitioner that it

had denied parole for three years because Petitioner posed an unreasonable risk of danger if released based on the commitment offense, Petitioner's minimization of his responsibility and role in the offense, his limited insight, and his incomplete course of self-help and therapy. (Pet. 106-23.)

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011). However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[1] Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

There is no right under the Federal Constitution

---

[1] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. Id. at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. Id. at 13.  In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. Id. at 15.

13

> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the petitioners had received the process that was due:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the federal Due Process Clause.  Id. at 862-63.

Petitioner asks this Court to engage in the very type of analysis foreclosed by Swarthout.  Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement.  Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.  Consideration of Petitioner's more specific points concerning the suitability

14

factors in his case would amount to undertaking the very analysis disapproved by the Court in Swarthout.

Petitioner cites state law concerning the appropriate weight to be given to evidence. To the extent that Petitioner's claim rests on state law, it is not cognizable on federal habeas corpus. Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schiavo, 289 F.3d 616, 623 (9th Cir. 2002).

It appears from the attachments to Petitioner's petition that Petitioner had an opportunity to review in advance and contest the evidence against him and to speak at the hearing. Further, Petitioner received a statement of the reasons for the decision. Federal due process of law does not require that many letters that were written on behalf of Petitioner be read at the hearing. Thus, Petitioner's allegations concerning the board's failure to read his letters at the hearing do not negate the clear documentary showing that Petitioner received all process that was due under the circumstances.

The Court, therefore, concludes that Petitioner cannot state facts constituting a cognizable due process claim in connection with the denial of his parole. Accordingly, the Court will recommend that Petitioner's due process claim be dismissed without leave to amend.

///

### V. Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court should decline to issue a certificate of appealability.

VI.  Recommendations

Accordingly, it is RECOMMENDED that:

1) The petition for writ of habeas corpus be DISMISSED without leave to amend for failure to state a claim cognizable pursuant to 28 U.S.C. § 2254; and

2) The Court DECLINE to issue a certificate of appealability; and

3) The Clerk be DIRECTED to close the action because the dismissal will terminate the action.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

17

636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 6, 2011**                             /s/ Sheila K. Oberto
                                                      UNITED STATES MAGISTRATE JUDGE